E. SOHIER WELCH & another, trustees, *vs.* EDITH MADELAINE KING.

Suffolk.    December 10, 1931. — June 27, 1932.

Present: RUGG, C.J., PIERCE, WAIT, & FIELD, JJ.

*Contract*, Validity, Ratification by minor, Marriage contract.   *Minor.*
   *Probate Court*, Jurisdiction, Decree.

In 1902 a marriage contract was executed under R. L. c. 153, §§ 26, 27, 28,
   between a man, a minor woman more than eighteen years of age and
   her guardian, and a trustee, which set forth a schedule of property com-
   prising the trust estate and which contained a provision, among others,
   that "all income producing property and estate hereafter accruing to
   . . . [the minor] or to which she is or may be entitled by deed, bequest,
   inheritance or devise, shall be transferred and conveyed to said trustee,
   or his successor to be held by him or them upon the trusts herein de-
   clared."   A decree approving such trust was entered in a probate court
   under said § 28.   In 1931 the husband gave to his wife a bond, for which
   a succeeding trustee made demand upon her under the quoted provision
   of the contract.   She refused to comply with the demand.   In an action
   by the succeeding trustee against her to recover the value of the bond,
   it was *held*, that
      (1) The provision in question was beyond the scope of said statute
   and therefore was not binding on the defendant by virtue thereof;
      (2) The decree of the Probate Court, so far as it approved such pro-
   vision, was beyond the jurisdiction of that court;
      (3) It was open to the defendant in this action to contend that such
   provision was not binding upon her because made when she was a
   minor.
It appearing in the action above described that, although the defendant,
   after she became of age, had approved the annual accounts of the
   original trustee and of the succeeding trustee and had consented to the
   appointment of the succeeding trustee in 1919, no property had ac-
   crued to her within the terms of the quoted provision of the contract
   subsequent to the attainment of her majority, that she had never con-
   veyed any property to either of the trustees after the date of the con-
   tract and that no demand had been made upon her to do so up to the
   time of the demand for said bond, it was *held*, that
      (1) The defendant had repudiated such provision of the contract
   within a reasonable time;
      (2) The plaintiff could not recover.

CONTRACT.   Writ dated May 26, 1931.

The action was heard in the Superior Court by *F. T.*
*Hammond*, J., without a jury, upon an agreed statement of

facts. Material facts appear in the opinion. The judge, without decision, reported the action for determination by this court.

*T. M. Reynolds & R. G. Wellings,* for the plaintiffs, submitted a brief.

*T. Hunt,* for the defendant.

RUGG, C.J. This is an action of contract whereby the plaintiffs seek to recover the sum of $1,000 alleged to be due under an agreement. The case was submitted upon the pleadings and a statement of agreed facts. The trial judge found the facts as set forth in the statement of agreed facts and without decision reported the case to this court for its determination, such judgment to be entered as law and justice require.

The pertinent facts are these: In 1892 Francis C. Welch was appointed guardian of the defendant, then about ten years of age, and gave bond as required by law. In December, 1902, the guardian filed a petition in the Probate Court alleging that his ward, being then more than eighteen years of age, had entered into a contract of marriage with one Herbert Thorn King, and prayed that as such guardian he might be authorized to transfer certain property then held by him as guardian to himself as trustee under an indenture annexed to the petition. The indenture was of three parts, executed in November, 1902, by and between the defendant under her maiden name, said Francis C. Welch as her guardian, and said Francis C. Welch, of the first part, Herbert Thorn King, the prospective husband of the ward, of the second part, and said Francis C. Welch as trustee under the indenture for the benefit of his ward, of the third part. The indenture contained recitals of a contract of marriage between Herbert Thorn King and said ward, and a reference to R. L. c. 153, § 28. The terms of the trust are set out, and there is annexed a schedule of shares in various corporations and other property constituting the trust estate and to be affected by the indenture. The sixth clause of the indenture is in these words: "It is further covenanted and agreed by and between said parties that all income producing property and estate hereafter

accruing to said Edith or to which she is or may be entitled by deed, bequest, inheritance or devise, shall be transferred and conveyed to said trustee, or his successor to be held by him or them upon the trusts herein declared as if the same had been originally paid over and delivered to said trustee on the execution of this Indenture." A decree of the Probate Court entered on December 18, 1902, was to the effect that "the said minor may join with her said guardian in making such marriage contract and for such purpose the said guardian and ward may convey her property to a trustee . . . to be held upon the trust declared in said contract . . . and such conveyance shall have like effect as if said minor was of full age." Thereafter, from December, 1902, to the decease of the said Francis C. Welch in 1919, said Welch as trustee under the indenture, collected the income and profits of said trust and disposed of it according to the terms of the indenture. Annual accounts were rendered by the trustee of his administration of the trust, which the defendant approved. The original trustee having died, the plaintiffs in 1919 were appointed succeeding trustees under the indenture and have rendered annual accounts in writing to the defendant of their administration of the trust and the defendant has approved them.

The defendant, since the date of the indenture, has never transferred or conveyed to the original trustee or the succeeding trustees under the indenture any property and no demand has ever been made upon her to do so except that in May, 1931, Herbert Thorn King, husband of the defendant, made a gift to her of a United States Liberty Loan Bond of the value of $1,000. The trustees thereupon gave notice to the defendant that such bond was income producing property within the meaning of clause Sixth of the indenture and demanded that the bond be turned over to them to be held under the indenture for the uses and purposes of the trust. The defendant refused to comply with this demand. It is to recover the value of that bond that the present action is brought.

It has not been contended that the gift from her husband to the defendant would not fall within the sweep of the

covenant as to future acquired property, if binding upon the defendant. See *In re Plumptre's Marriage Settlement,* [1910] 1 Ch. D. 609, 615–616.

The demand was in conformity to the words of said clause Sixth. The question to be decided, therefore, is whether that clause is binding on the defendant. She was a minor at the time the indenture was signed. Therefore, under familiar principles, she cannot be bound now by that clause unless (1) its binding force was authorized by some enabling statute, or unless (2) she has ratified it since reaching majority.

1. The indenture purports by its terms to have been executed under R. L. c. 153, §§ 26, 27, 28, (now G. L. c. 209, §§ 25, 26, 27,) which are printed in a footnote.* Under the common law and without some statute of this nature, marriage between parties, who had previously made contracts with each other to be performed presently or during the marriage, released or extinguished such contracts. This

---

\* Section 26. At any time before a marriage, the parties may enter into a contract in writing, agreeing and providing that, after the marriage is solemnized, the whole or any designated part of the real or personal property or any right of action, of which either party may be seised or possessed at the time of the marriage, shall remain or become the property of the husband or wife, according to the terms of the contract. Such contract may limit to the husband or wife an estate in fee or for life in the whole or in any part of the property, and may designate any other lawful limitations. All such limitations shall take effect at the time of the marriage in like manner as if they had been contained in a deed conveying the property limited.

Section 27. There shall be annexed to such contract a schedule of the property intended to be affected thereby, which shall contain a sufficiently clear description of the property to enable a creditor of the husband or wife to distinguish it from all other property; and such contract and schedule shall, either before the marriage or within ninety days thereafter, be recorded in the registry of deeds for the county or district in which the husband resides at the time of the record, or, if he is not a resident of this commonwealth, then in the registry of deeds for the county or district in which the wife resides at the time of the record, if it is made before the marriage, or in which she last resided, if made after the marriage. If the contract is not so recorded, it shall be void except as between the parties thereto and their heirs and personal representatives. It shall also be recorded in the registry of deeds for every county or district in which there is land to which it relates.

Section 28. A female minor who has attained the age of eighteen years may join with her guardian in making such marriage contract, and for such purpose the guardian and ward may convey her real and personal property to trustees approved by the probate court having jurisdiction over said minor, to be held upon the trusts declared in such contract, and such conveyance shall have like effect as if said minor was of full age, and the guardian in the settlement of his accounts shall be allowed by the probate court for all property so conveyed to said trustees; and said court may require said trustees to give bond with sufficient sureties for the faithful performance of their trust.

rule did not prevail in equity where some relief respecting antenuptial contracts was afforded. *Miller* v. *Goodwin,* 8 Gray, 542. *Paine* v. *Hollister,* 139 Mass. 144. *Deshon* v. *Wood,* 148 Mass. 132. Doubtless this statute was enacted to ameliorate the severity of that common law doctrine. The provisions of § 26 by express terms authorize contracts touching only real or personal property or rights of action "of which either party may be seised or possessed at the time of the marriage." Manifestly these words cannot be stretched to include property acquired in the future and long subsequently to the marriage. The concluding sentence of that section is quite inconsistent with the conception of including future acquired property. The requirements of § 27 respecting a schedule of property to be affected, to be annexed to the contract and recorded not later than ninety days after the marriage, are not susceptible of comprising future acquired property. The terms of § 28, under which alone the contract here in issue respecting a minor could be made binding, authorize simply the making of such a marriage contract as is described in the two preceding sections and a conveyance of the "real and personal property" of the ward to a trustee. There is nothing in this section to empower anybody to make a contract reaching into the future so as to bind property and estate thereafter accruing to the ward. The necessary construction of the enabling statute excludes the idea that it authorizes or contemplates a contract to be made by and in behalf of a female minor to govern the disposition of property accruing to her after the marriage and after the time for recording the contract and schedule. There is nothing in *Freeland* v. *Freeland,* 128 Mass. 509, justifying a different result. The antenuptial contract there before the court was not made by and in behalf of a female minor but between persons of full age. Although it contained a clause to the effect that each party after marriage should "retain their respective estates, with such as may hereafter accrue to them, separate and apart from the other," the controversy did not relate to the meaning, effect or validity of that clause but to a quite different provision.

The remark in the opinion to the effect that the contract was valid under the statute "so far as it relates to the interest of either of the parties to the intended marriage in the estate of the other during the coverture," affords no support to the contention of the plaintiffs. Every opinion is to be read in connection with the facts, issues and contentions then before the court. *Swan* v. *Justices of Superior · Court*, 222 Mass. 542, 545. *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 343–344. *Sinclair* v. *United States*, 279 U. S. 749, .767.

The decree of the Probate Court of December 18, 1902, empowering the execution of the contract, can give no greater sanction to the contract than the statute itself conferred. It is open to the defendant in this action to assail the binding force of clause Sixth because it manifestly was beyond the scope of the statute and outside the jurisdiction of the Probate Court to authorize. It may be attacked collaterally. *Farquhar* v. *New England Trust Co.* 261 Mass. 209, 213–214. *Davis* v. *McGraw*, 206 Mass. 294, 298. *O'Herron* v. *Gray*, 168 Mass. 573, 578.

2. The contract of a minor is not void but voidable. It may be ratified by the minor after reaching majority. Such ratification may be shown by express words or it may be inferred from conduct. It is the general rule that, since the privilege of disaffirmance belongs to the minor alone and cannot be exercised by the other party to the contract, it must be exercised within a reasonable time having regard to all the circumstances. *Boyden* v. *Boyden*, 9 Met. 519, 521. *Tobey* v. *Wood*, 123 Mass. 88. *Edwards* v. *Carter*, [1893] A. C. 360.

The question remains, what is a reasonable time within which the defendant in this case might disaffirm? So far as shown by this record, no occasion has hitherto arisen for the defendant to declare herself in confirmation or repudiation of this clause of the contract. Her assent to the accounts of the trustees covering a considerable period of years cannot be regarded as ratification, because no such account contained any items derived under this clause or relating to it. Her consent to the appointment of new

trustees in succession to the first trustee had no such effect. The original conveyance of property under the agreement under § 28 was of like effect as if she were of full age. Therefore, the trust was valid and must continue and new trustees were required whenever a vacancy might occur. The defendant acquired nothing under this clause and therefore there was no obligation of good faith requiring her either to confirm or disaffirm at an early date. No one was misled to his harm by her inaction. It is to be noted that the property which has accrued to her was a pure gift. She had no vested, potential, reversionary, contingent, or future interest in it until the gift actually was made to her. So far as the record discloses, she had no expectation until its actual receipt that the bond would ever become her property. It does not appear that any property has been given to the defendant, or has come to her by descent, devise, or bequest, since she reached majority, which could fall within the terms of the covenant. It would have been a dumb show for the defendant to undertake a repudiation of the clause before any one could anticipate that it would ever be operative. In all these circumstances, we are of opinion that repudiation of this clause was made by the defendant within a reasonable time, because exercised when for the first time by virtue of a fortuitous event it appeared that any property accrued to her upon which the clause could operate. It was even held by North, J., in *In re Jones*, [1893] 2 Ch. D. 461, 469, respecting a reversionary interest belonging to a female minor who had executed a contract of a somewhat similar antenuptial nature, that "it is not an unreasonable time if she elects to repudiate the settlement when for the first time the question arises whether anything is or is not to be received by her or her trustees under it . . . ." As applied to such an interest, that rule was not followed by the Court of Appeal in *Carnell* v. *Harrison*, [1916] 1 Ch. D. 328, 331, 339, 340, 342. The facts in those cases were quite different from those here presented. The grounds of decision in *Carnell* v. *Harrison* are not relevant to the case we have to determine. The question here involved was not presented to the de-

fendant for action until the demand was made upon her by the trustees for the bond accruing to her by gift. That demand was seasonably refused. The purpose to disaffirm is now manifest by pleading the defence of minority at the time of the execution of the contract in the case at bar. *Freeman* v. *Nichols*, 138 Mass. 313.

It follows that the entry must be

*Judgment for defendant.*